IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DONALD RAGLIN                                                                    PLAINTIFF

VERSUS                                            CIVIL ACTION NO. 3:12-cv-00543-DPJ-FKB

MSJ TRUCKING, INC., GEORGE M. BRYANT
AND JOHN DOES 1-3                                                               DEFENDANTS

**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANT
MSJ TRUCKING, INC. AND GEORGE M. BRYANT'S
MOTION TO EXCLUDE  EXPERT OPINION TESTIMONY OF DANE MAXWELL**

COME NOW Defendants, MSJ Trucking, Inc. and George M. Bryant, by and through

counsel, and pursuant to Federal Rules of Evidence 702 and submits this their Memorandum Brief

in Support of their Motion to Exclude expert opinion testimony of Dane Maxwell and would show

unto the Court as follows to wit:

## I.  INTRODUCTION

This action arises out of an automobile accident that occurred on December 7, 2010.  Plaintiff

Donald Raglin and Defendant George Bryant were traveling southbound on Highway 49 in Rankin

County, Mississippi.   Bryant was operating a commercial vehicle subject to the Federal Motor

Carrier Safety Regulations.  Ahead of Raglin a truck pulling a trailer stopped in the lane of travel to

make a right hand turn.  Raglin stopped his vehicle but Bryant was unable to stop and collided with

the rear of the vehicle driven by Raglin.  As a result of the collision Raglin is alleged to have

sustained personal injuries.

Donald Raglin filed his Complaint in this matter on July 27, 2012 and alleged that he

sustained injuries as a result of the subject collision due to Bryant's negligence.  To bolster his

allegations, Raglin has designated Dane Maxwell as an expert in Federal Motor Carrier Safety

Regulations, who is expected to testify that the cause of the accident was the Defendants' violations of Federal Motor Carrier Safety Regulations, specifically with respect to Bryant's recording of time and duty status in his driver log.   The purpose of the Federal Motor Carrier Safety Regulations, hours of service regulations are to "help reduce or prevent truck and bus accidents, fatalities and injuries by requiring drivers to have a single commercial motor vehicle driver's license and by disqualifying drivers who operate commercial motor vehicles in an unsafe manner." 49 CFR 383.1(a). The regulations related to the limitations on hours of operation, are intended to prevent fatigued driving. There is no evidence that Bryant was fatigued at the time of the subject accident. Specifically, the regulations provide that in a twenty-four (24) hour period a driver may drive a total of eleven (11) hours during a fourteen (14) hour period following a period of ten (10) consecutive hours off duty.

Maxwell's report sets forth his opinions that Defendants violated various sections of the Federal Motor Carrier Safety Regulations with respect to Bryant's daily log.   Exhibit "A" Specifically Maxwell's report states that: (1) Defendants' failed to comply with the requirement of ensuring the driver is qualified to drive a commercial vehicle; (2) Defendants' violated the driver's record of duty status; (3) Defendants falsified driver Bryant's actual activities in his logbook and the information was not accurately logged as required; (4) Defendant MSJ Trucking violated the regulations by allowing driver Bryant to operate the commercial motor vehicle when he had not complied with the requirement to be off duty for the appropriate number of consecutive hours; (5) driver Bryant violated the regulations as he operated the commercial motor vehicle when he had not complied with the requirements to be off duty for the appropriate number of consecutive hours.  As will be discussed below, Maxwell's testified that Bryant daily log did not reflect that Bryant exceeded the  number of hours of driving or resting time, as set out in the regulations.

-2-

Maxwell is also expected to testify that because Bryant incorrectly recorded his time during periods of loading and unloading of his trailer, prior to the subject collision that Bryant committed "out of service" violations and should not have been operating the commercial motor vehicle at the time of the collision.

Specifically, on December 5, 2010, Bryant recorded in his log that he was "off duty" for a period of one (1) hour when Bryant was sitting in the sleeper of his truck waiting for his truck to be unloaded and reloaded, and for a period of two (2) hours between 11:00 a.m. and 1:00 p.m. as "off duty," during which time Bryant was on a private lot dropping a trailer and picking up another trailer. Exhibit "C" and Exhibit "F" p. 55-56.  Next on December 6, 2010, Maxwell asserts that Bryant incorrectly recorded himself as "off duty" between 9:00 a.m. and 10:00 a.m., and again between 12:00 noon and 3:00 p.m. during which times Bryant was waiting for his truck to be loaded and unloaded. Exhibit "D" Exhibit "F" p. 57-58.  Finally, on December 7, 2010, the date of the subject collision, Maxwell opines that Bryant incorrectly logged himself as "off duty" for approximately one (1) hour between 7:15 a.m. and 8:30 a.m. when Bryant testified that he stopped at a truck stop to buy fuel and take a shower. Exhibit "E" and  Exhibit "F" p. 60.   Maxwell offers additional opinions regarding Bryant's log book following the subject collision which are irrelevant, as discussed below.

Based on all of the aforementioned, Maxwell is expected to testify that, had Bryant been placed "out of service" at the time of the accident, the accident could not have happened. Importantly, in his deposition, Maxwell testified that Bryant, even with the purported violations, <u>did not drive in excess of the eleven (11) hour maximum limit, and did not violate the required ten (10) consecutive hours off duty</u>.  Exhibit "G" pp. 68, 79, and 82.

Maxwell's *ipse dixit* opinions should be excluded. Dane Maxwell's opinions were not reached through the use of any scientifically valid methodology.  Moreover, Maxwell is not qualified

under Federal Rule of Evidence 702 to offer these opinions.  No amount of familiarity with the

Federal Motor Carrier Safety Regulations would qualify him to opine *why* an accident took place.

Dane Maxwell's testimony should be precluded in its entirety.

## II.   LAW AND ARGUMENT

### A.      The Standard for Admission of Expert Testimony

The admissibility of expert testimony is governed primarily by Rule 702 of the Federal Rules

of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may testify thereto in
> the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts
> or data, (2) the testimony is the product of reliable principles and methods, and (3)
> the witness has applied the principles and methods reliably to the facts of the case.

The United States Court of Appeals for the Fifth Circuit has held that when deciding whether expert

testimony is admissible, "the court must ensure the expert uses reliable methods to reach his

opinions; and those opinions must be relevant to the facts of the case." *Guy v. Crown Equip. Corp.*,

394 F.3d 320, 325 (5th Cir. 2004) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S.

579, 593-94, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)).

A party who offers expert testimony has to show that the expert's opinion is not based "on

opinions or speculation, but rather on scientific methods and procedures." *Webb v. Braswell*, 930

So., 2d 387, 397 (Miss. 2006) (citing *Miss. Transp. Comm'n v. McLemore*, 863 So. 31, 36 (Miss.

2003)).  Two important considerations that determine "whether a theory or technique is scientific

knowledge that will assist the trier of fact will be whether it can be (and has been) tested ... [and]

whether the theory or technique has been subjected to peer review and publication. *Daubert*, 509

U.S. at 593.  "An expert who supplies nothing but a bottom line supplies nothing of value to the

judicial process." *Glenn v. Overhead Door Corp*., 935 So. 2d 1074, 1080 (Miss. Ct. App. 2006) (citing *Mid-State Fertilizer Co. v. Exchange Nat. Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989)). While Federal Rule of Evidence 704 states that "opinion testimony otherwise admissible is not objectionable because it includes an ultimate issue to be decided by the trier of fact; Federal Rule of Evidence 702 permits the district court to admit expert testimony that will assist the trier of fact in either understanding the evidence or determining a fact in issue." However, "neither rule permits expert witnesses to offer conclusions of law." See C *P Interests, Inc. v. Cal. Pools, Inc*., 238 F.3d 690, 697 (5th Cir. Tex. 2001) (citing *Owen v. Kerr McGee Corp*., 698 F.2d 236, 240 (5th Cir. 1983)). Questions which simply allow the witness to tell the jury what result to reach are impermissible, as are questions asking the witness for a legal conclusion. *Dale v. Bridges*, 507 So. 2d 375, 378 (Miss. 1987) (citing *Matthews v. Ashland Chemical, Inc*., 770 F.2d 1303, 1311 (5th Cir.1985); *Owen v. Kerr-McGee Corp*., 698 F.2d 236, 240 (5th Cir.1983)).

**B**.    **Dane Maxwell is not qualified to give opinions on causation.**

Maxwell is patently unqualified to give an expert opinion on the cause of the subject accident. Maxwell holds himself out as an expert in the field of Federal Motor Carrier Safety Regulations. See Exhibit "B." However, his curriculum vitae shows that Maxwell's background is in law enforcement.  *Id*.  Maxwell has no college degree, junior college or otherwise, and certainly does not have a law degree.  See Exhibit "G" pp. 34-35.  Maxwell testified that he is not an accident reconstructionist, and he does not hold himself out to be an accident reconstructioninst.  Exhibit "G" p. 33. Familiarity with the Federal Regulations does not enable someone to determine the cause in fact of a collision.  Maxwell clearly is not qualified to give opinion testimony on the cause of this collision  He should not be allowed to testify to the jury his speculative belief as to why the subject accident occurred.

**C.    Maxwell did not reach his opinion on the cause of the accident through any accepted methodology.**

A party offering expert testimony must establish, in addition to demonstrating the expert is qualified, that the expert's opinion is scientifically valid and methodologically sound.  *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). Rule 702 requires that an expert (1) utilize reliable principles and methods, and (2) reliably apply those principles and methods to the facts of the case. The party seeking to have expert testimony admitted must demonstrate that the expert's findings and conclusions are based upon the scientific method.  *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).   This necessarily requires "objective, independent validation of the expert's methodology" to insure that his opinion is both relevant and reliable.  *Moore*, 151 F.3d at 276;(*E.g. Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

Maxwell testified that his methodology in formulating his opinions was to review Bryant's log books and determine if they are in compliance with the regulations.  Exhibit "G" p. 12 -13.  By Maxwell's own testimony this is a simple action:

> like in this particular case my testimony is very narrow, did he comply with the hours of service or did he not. ... It's fairly simple.  Did he – is this his log book? Yes. Did he sign it? Yes.  Did he make these indications? Yes.  Did he comply with the rules? Did he follow the graft? Did he put on duty when he was suppose to? Those are very simple things to look at."

As will be discussed further below, Maxwell's "methodology" is nothing more than an avenue to sidestep the law regarding proximate cause of an accident in favor of formulating an opinion as to strict liability.  Maxwell's opinions are not the product of some reliable and tested methodology needs no real explanation.  According to Maxwell, the Federal Regulations require the driver to accurately maintain his log book, and if said driver inaccurately records a single hour of time, this leads to a collision.  Maxwell also touts that his methodology is scientific because he is

"using" the Federal Motor Carrier Safety Regulations which were created by scientific studies. Exhibit "G" p. 21. Simply understanding the Federal Motor Carrier Safety Regulations and viewing them in conjunction with a driver's log-book falls far short of satisfying the *Daubert* standard.

> **D.      Maxwell's opinions that the purported violations of the Federal Motor Carrier Safety Regulations are the cause of the subject accident should be excluded because they will not assist the trier of fact in understanding the evidence or in determining a fact in issue.**

Dane Maxwell has been designated by the Plaintiff as an expert to testify that (1) the Defendant was in violation of multiple sections of the Federal Motor Carrier Safety Regulations; and (2) that these violations of the Federal Motor Carrier Safety Regulations were "out of service violations" which "substantially contributed to and were the cause of the crash."

The Court must first consider whether Maxwell's opinions regarding the incorrect entries in the driver log being the cause of the subject collision "will assist the trier of fact to understand the evidence or to determine a fact in issue," which is a question of relevance. See *Daubert*, 509 U.S. at 591; FED. R. EVID. 702. "In order to 'assist the trier of fact,' the opinions/testimony of an expert witness must 'concern matters beyond the understanding of the average person.'" *Bridges v. Enter. Prods. Co.*, 2007 U.S. Dist. LEXIS 9224, 9-10 (S.D. Miss. Feb. 8, 2007) (citing 4 WEINSTEIN'S FEDERAL EVIDENCE, § 702.03 (2 ed. 2003). See also *United States v. Moore*, 997 F.2d 55, 57 (5th Cir. 1993) ("An expert's testimony may take the form of an opinion if it 'serves to inform the jury about affairs not within the understanding of the average man.'") (quoting *United States v. Webb*, 625 F.2d 709, 711 (5th Cir. 1980)); *Gust v. Jones*, 162 F.3d 587, 594-95 (10th Cir. 1998) (finding that expert testimony may be excluded in cases in which the "normal life experiences of the jury would permit it to draw its own conclusions" and "when expert testimony is offered to explain a question the jury is capable of assessing itself.") (citations omitted)).  Maxwell's opinions do not

serve to inform the jury about matters outside the understanding of the average man, and do not explain anything to the jury that they are not capable of assessing.

Maxwell testified that the violations he alleges in Mr. Bryant's log book were out of service violations, and therefore Mr. Bryant should not have been on the road at the time of the collision. Exhibit "G" p. 68.  In a similar case, *Utz v. Running & Rolling Trucking, Inc.*, 32 So. 3d 450 (Miss. 2010), the Mississippi Supreme Court upheld a trial courts exclusion of similar testimony[1]. Specifically finding that the trial court's ruling was not error:

> The trial court, in the order granting in part and denying in part R&R's motion to strike various opinions to be offered by Carla's expert witnesses, determined that all of the expert witnesses for Carla had a common theme of strict liability against R&R, based on her theory that the truck had no reflective tape and, therefore, it should not have been on the roadway. The trial court stated:
>
>> Causation - Strict Liability
>>
>> A common theme running through all of the opinions  of the plaintiff's experts is their position that because the truck failed to have the federally required amount of reflective tape on the rear of the truck, the truck should not have been on the highway, and thus they conclude the defendants are liable for the injuries and death of the plaintiff simply because the truck was on the roadway. By this argument, the plaintiff seeks to impose strict liability against the defendants.
>>
>> Strict liability is not pled in the complaint. Also, this court is of the opinion that this case is not one premised on strict liability. Although the violation of federal regulations alleged by the plaintiff -- the failure to have reflective tape attached to the rear of the trailer -- is a factor that may be considered by the jury when assessing liability, there must exist some casual connection between the alleged violation and the accident. Without  such a causal connection, it is

---

[1] It is of interest, that Mr. Maxwell's was designated as an expert in *Utz v. Running & Rolling Trucking, Inc.*, and that the Court excluded his testimony regarding the cause of the accident being the violation of the FMCSR. 32 So. 3d at p. 468.   Likewise, the United States District Court for the Southern District of Mississippi, in *Bridges v. Enter. Prods. Co.*, 2007 U.S. Dist. LEXIS 9224, 9-10 (S.D. Miss. Feb. 8, 2007) excluded Maxwell's proposed testimony regarding causation.

this court's view that no liability would attach to the defendants premised only upon an alleged violation of federal or state regulations.

> **For the reason stated above, no expert will be permitted to opine or give testimony to the effect that the subject truck should not have been on the highway due to its alleged failure to comply with federal regulations**.

*Utz*, 32 So. 3d at 465-66 (**Emphasis added**.)

Maxwell's alleged violations of the Federal Motor Carrier Safety Regulations present a question of applying the law to the facts presented. Maxwell's legal conclusions that the Defendants are in violation of various sections of the regulations, and that these violations were the cause of the collision not only improperly offer inadmissible legal opinions, but offers legal opinions as to the ultimate issues that the jury will be called upon to reach. See *Wittington,* 523 So. 2d 966.

Furthermore, as in *Utz*, Maxwell's opinions would impermissibly inform the jury that the Defendants should be held strictly liable for any perceived violation of the Federal Motor Carrier Safety Regulations. That is simply not the law, and Maxwell should not be allowed to proffer testimony to that effect.

### E.     Maxwell's opinions are unreliable and his deposition testimony contradicts his written report.

Maxwell's opinions are based on his assertion that Mr. Bryant incorrectly logged his time, and thus "falsified" his log book. However, Maxwell was questioned about the specific violations outlined in his written report. Exhibit "A" Maxwell's report indicates that the Defendants violated sections 395.13(c)(ii) and 395.13(d)(2) regarding the hours of service, and specifically that Bryant did not comply with the requirement to be off duty for the appropriate number of consecutive hours. 49 C.F.R. 395.13 Maxwell testified in his deposition that on couple of occasions Bryant entered in his log book that he was "off duty" when he should have been "on duty not driving," and that these

errors constitute falsifying his log book because they do not accurately record Mr. Bryant's activity.

Exhibit "G" p. 62. However, Maxwell testified as follows:

> Q:    What do the regulations say about the number of hours a driver can drive or operate his vehicle, drive his vehicle?
>
> A:    11.
>
> Q:    11 hours?
>
> A:    Correct.
>
> Q:    And the regulations are specific regarding the number of hours that a driver must be in the sleeper berth or off duty sleeping?
>
> A:    Correct.
>
> Q:    How many hours is that?
>
> A.    Ten consecutive.
>
> Q:    ... Eleven hours driving limit, ten hours in consecutive sleeping, that's 21 hours, correct?
>
> A:    Correct.
>
> Q:    There's three more hours in the day?
>
> A:    Correct.
>
> Q:    What are those three hours allotted to?
>
> A:    Could be a continuation of the off duty, continuation of the sleeper berth, or he could be on duty not driving.
>
> Q:    Okay.  But the regulations are not - do not place a limitation on those other three hours do they?
>
> A:    No.
>
> Q:    The other three hours, regardless of how they're allocated, are not specifically addressed in the regulations?

A:     Well, unless he's operating past those limits.  If he uses those three hours to drive, then, yes, it would be in the book.

Exhibit "G" p; 57-59

Maxwell goes on to testify that regarding the entry on December 5, 2010, where he asserts that Mr. Bryant recorded an hour of time between 9:00 a.m. and 10:00 a.m. as "off duty" but Maxwell argues should have been recorded as "on duty not driving:"

Q:     I am talking about one off duty time, one hour between 9:00 a.m. and 10:00 a.m.  That's what you just identified a moment ago.

A:     I'm aware of that but ...

Q:     Okay.  So if Mr. Bryant had recorded that as on duty not driving, you'd be okay with that?

A:     That would be where he needed to record it correctly.

Exhibit "G" p.64.   Maxwell's testimony continues:

Q:     Okay.  If Mr. Bryant had moved this hour to on duty not driving – because he was not driving – because he was not driving the vehicle, correct?

A:     Correct.

Q:     That would have fixed your perceived problem with this entry?

A:     That particular entry would have been logged correctly.

Q:      But that would not have affected the number of hours he was driving, correct?

A:     Correct, because it had been on duty not driving.

Q:     So that hour falls within that three hours that we talked about a minute ago that are not specifically directed by the regulations, as long as you don't violate the driving and as long as you get enough sleep.

A:     Trying not to complicate it, but there's only nine hours of drive time so it would have fell within the nine hours not the additional three.

-11-

Q:     How? He wasn't driving.

A:     I mean, on duty not driving.  There was one hour.  I'm sorry I looked at it wrong.  It was one hour.  So it would have accumulated – so you're talking about the additional three that we talked about earlier?

Q:     I'm talking about the three hours that we talked about earlier.

A:     Yeah.  It would have dropped in the on duty not driving.

Q:     Okay.  So we would've added an hour there, that would have made it two.  We'd have taken an hour from the off duty, but it would not have affected his driving hours correct?

A:     That is correct?

Q:     Okay.  He still is under 11 hours – the 11-hour limit of driving?

A:     It would have - he would have remained under the 11 hour.

Q:     It also would not have affected his required ten consecutive hours of sleeping, correct?

A:     It wouldn't have affected the number, but the falsification is Out of Service.  So it – would have affected his ability to operate and – and be qualified.

Q:     Out of Service?

A:     Yes.

Q:      What do you mean Out of Service?

A:     Well, a false entry into a log book would have been an Out of Service violation.

Q:     Did someone give him an Out of Service violation?

A:     No, but they should.  That's my point.

Exhibit "G" p. 67-69.  The daily log entries for December 5, 2010, reflect that Bryant came on duty, drove a total of nine (9) hours, had the appropriate number of hours in the sleeper.  Exhibit "C" Maxwell went on to testify that even if Bryant had been driving the vehicle during the two hour

period that Maxwell asserts is incorrectly recorded, Bryant would not have violated the maximum number of driving hours allowed by the regulations.  Exhibit "G" p. 71-73.

Maxwell offers similar testimony regarding a purported violation on December 6, 2010:

Q:    But it would not affect the number of hours he operated – that he drove the truck?

A:    Because it would be on duty not driving, it wouldn't affect his drive time.

Q:    So he would not have exceeded the hours?

A:    He would not have.

Q:    Your problem with this entry is the difference between the off duty and the on duty not driving, correct?

A:    Well, it's – my problem with this entry is that it's not accurate.  That's simply my problem.

Q:    Okay.  As we discussed that would fall into those three hours a day that are not specifically regulated with limits for driving or sleeping?

A:    It would be those three.

Exhibit "G" p. 78-79.  Bryant's daily log for December 6, 2010, show that Bryant was in the sleeper for the appropriate number of hours, drove the vehicle for a total of eight (8) hours, was off duty or on duty not driving for a total of six (6) hours.  Exhibit "D"  Maxwell testified that he did not see any other problems with the December 6, 2010, daily log.  Exhibit "G" p. 79

In *Utz*, the Plaintiff's expert was prevented from testifying that the driver was "out of service."  Maxwell should likewise be prevented from testifying that Mr. Bryant was "out of service." *Utz* 32 So. 3d 464.  As in *Utz*, the Federal Motor Carrier Safety Regulations states that "every special agent of the Federal Motor Carrier Safety Administration ... is authorized to declare a driver out of service. ... " 49 C.F.R. 395.13.  Maxwell's testimony was that no one ever declared Mr. Bryant out of service, and further that the incorrect entries of time did not cause a violation in the number of

-13-

consecutive hours driven or the requirement to be off duty for an appropriate number of consecutive hours.  Exhibit "G" p.69, 71-73, and 78-79.  Maxwell should be precluded from testifying that Mr. Bryant was out of service, because by his own admission Mr. Bryant was never declared out of service.  Exhibit "G" p. 69.

      **F.**      **Maxwell's opinions regarding Mr. Bryant's log book following the accident are irrelevant and should be excluded**.

Finally, Maxwell's report, and portions of his deposition testimony, contain opinions of Mr. Bryant's log book following the accident.  Any opinion Maxwell may have regarding Mr. Bryant's log book after the December 7, 2010, automobile accident are not relevant to the circumstances of the accident and should be excluded.

### III.  CONCLUSION

For the foregoing reasons, the Defendants respectfully request the Court enter an Order prohibiting Dane Maxwell from offering, or attempting to offer any opinions at trial concerning the purported "out of service" violations as the cause of the subject accident.  Maxwell is not qualified to offer such opinions and furthermore, any opinions associated with said violations are blatantly not reliable because said violations have no causal connection to the subject accident.

WHEREFORE, PREMISES CONSIDERED, Defendants MSJ Trucking Inc., and George Bryant, respectfully requests that this honorable Court grant its motion to exclude the proposed expert testimony of Dane Maxwell.

RESPECTFULLY SUBMITTED, this the  3rd  day of September, 2013.

                                **MSJ TRUCKING, INC. AND**
                                **GEORGE M. BRYANT, DEFENDANTS**

               BY:     S\ *Edward C. Taylor*_____
                        OF COUNSEL

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2013, I electronically filed the foregoing *Memorandum Brief in Support of Defendant MSJ Trucking, Inc. and George M. Bryant's Motion to Exclude Expert Opinion Testimony of Dane Maxwell* with the Clerk of the Court using the ECF system which sent notification to such filing to the following:

> J. Ashley Ogden, Esq.
> Wendy M. Yuan, Esq.
> Ogden Associates, PLLC
> 500 East Capitol Street, Suite 3
> Jackson, MS 39201
> *ashleyogden@aol.com*
> *wendy@ogdenandassoc.com*

THIS, the  3rd   day of September, 2013.

S\ *Edward C. Taylor*_____
OF COUNSEL

EDWARD C. TAYLOR - BAR #9043
etaylor@danielcoker.com
KRISTI ROGERS BROWN - BAR #101989
kbrown@danielcoker.com
DANIEL COKER HORTON AND BELL, P.A.
1712 15TH STREET, SUITE 400
POST OFFICE BOX 416
GULFPORT, MS 39502-0416
TELEPHONE:  (228) 864-8117
FACSIMILE:   (228) 864-6331
4229-125662